**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KENT HULL**
Indiana Legal Services, Inc.
South Bend, Indiana

ATTORNEY FOR APPELLEE
HOUSING AUTHORITY OF SOUTH
BEND:

**MICHAEL V. KNIGHT**
Barnes & Thornburg LLP
South Bend, Indiana

ATTORNEYS FOR
APPELLEE/INTERVENOR
ATTORNEY GENERAL OF INDIANA:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**FRANCES BARROW**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| BEATRIZ MORALES, <br>     Appellant-Defendant, <br><br>       vs. <br><br> HOUSING AUTHORITY OF SOUTH BEND, <br>     Appellee-Plaintiff, <br><br>     and <br><br> ATTORNEY GENERAL OF INDIANA, <br>     Appellee/Intervenor-Plaintiff. | No. 71A03-1308-SC-311 |

**March 24, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

## Case Summary

Beatriz Morales ("Morales") appeals the trial court's entry of judgment and order of eviction in favor of the Housing Authority of South Bend ("the Housing Authority"). During the proceedings before the trial court, Morales challenged the constitutionality of a statute, and the Office of the Indiana Attorney General appeared on behalf of the State of Indiana ("the State"). The trial court found no constitutional infirmity, and Morales also appeals that determination.

We affirm.

## Issues

Morales presents three issues for our review. We restate these as:

I. Whether, because of the nature of Morales's counterclaims, the trial court lacked subject matter jurisdiction over the case and thus erred when it did not transfer the case from the small claims to the plenary docket;

II. Whether the trial court's judgment is void because the process for appointing magistrates to the trial court in St. Joseph County is a special law prohibited under the Indiana Constitution; and

III.    Whether the trial court's entry of judgment against Morales and its determination of the damages owed to the Housing Authority was erroneous.

**Facts and Procedural History**

Morales signed a lease and moved into a residence owned by the Housing Authority in October 2000. On August 2, 2012, under the same lease, Morales moved into a residence on Twyckenham Drive in South Bend ("the residence").[1] On August 7, 2012, the Housing Authority delivered to Morales notice that after fourteen days, it would file suit to evict her from the residence if she did not pay past-due rent and other fees totaling $472.00.

On August 23, 2012, the Housing Authority filed a notice of claim in the small claims division of St. Joseph Superior Court. The notice of claim alleged that Morales was $472.00 in arrears on her rent for the residence. The Housing Authority also filed an application for immediate possession of the residence.

On October 16, 2012, Morales filed a motion to establish an escrow payment of $261.00 pending a ruling in a pair of cases that had been consolidated on the plenary docket, in which Morales had filed a motion to intervene. On October 17, 2012, the Housing Authority filed its exception to Morales's offer of surety, contending that Morales had not paid rent since July 2012, and that the offered surety of $261 was insufficient in light of the claimed arrears.

---

[1] A representative of the Housing Authority, Joann Watford, testified that residents enter into a single lease, under which rent is reassessed and living quarters reassigned pursuant to the terms of the lease.

3

On October 18, 2012, a hearing was conducted on the Housing Authority's application for immediate possession of the residence. The trial court denied the application for immediate possession on October 22, 2012.

The case had been set for a trial in the small claims court on November 16, 2012. On November 2, 2012, Morales answered the Housing Authority's notice of claim, and also asserted counterclaims and requested a jury trial. In her counterclaims, Morales alleged that the Housing Authority had violated its duties under the U.S. Housing Act of 1973 and the Fair Housing Act, as amended and as implemented by U.S. Department of Housing and Urban Development regulations, and that Morales was an intended beneficiary of these laws. Morales also claimed that the Housing Authority had discriminated against her on the basis of gender and national origin, and that the Housing Authority had not properly calculated her rent obligations in light of her income and changes in the amount of child support she received. Morales thus alleged that the Housing Authority had violated her due process rights under the Federal Constitution, due course of law rights under the Indiana Constitution, and statutory rights under federal law. Morales's counterclaims prayed for the following relief:

A. Transfer this case to the plenary docket of the St. Joseph Superior Court with waiver of transfer fee based upon the affidavit of indigence previously filed in this case by Ms. Morales;

B. Give notice of this action to the attorney general of Indiana, pursuant to I.C. § 34-14-1-11, that Ms. Morales challenges as unconstitutional Ind. Small Claims R. 2(B)(1) in that the rule violates the equal protection and due process clauses of the Fourteenth Amendment to the Constitution of the United States, Article 1 [sic] § 12 of the

4

Constitution of the State of Indiana […] and Article IV, [sic] § 23 of the Constitution of the State of Indiana[…];

C. On each claim, award compensatory damages exceeding $10,000 and exemplary damages exceeding $10,000;

D. Award declaratory judgment determining the rights and duties of the parties;

E. Upon motion, with notice and opportunity to be heard to [the Housing Authority], grant preliminary and permanent injunctions;

F. Establish a receivership to take control of all or part of [the Housing Authority's] property in South Bend, IN, with attendant administrative operations, so that Ms. Morales and her fellow residents are protected from injury and exploitation;

G. Award reasonable attorney fees, as allowed by 42 U.S.C. § 1988[,] 43 U.S.C. § 3601, et seq., or any other applicable authority;

H. Award such other relief [as is] appropriate.

(Appellant's App'x at 57-58.)

On November 5, 2012, the Housing Authority filed a motion to strike Morales's request for a jury trial. On November 7, 2012, the trial court denied Morales's request for a jury trial as "untimely, un-verified and therefore waived." (Appellant's App'x on 18.)

On November 12, 2012, after the trial court scheduled a hearing for December 6, 2012, without transferring the case to the plenary docket and ordering a jury trial, Morales filed a motion for immediate transfer of the case to the plenary docket. Morales based her motion on the nature of the relief requested in her counterclaim which, she asserted, removed the claim from the subject matter jurisdiction of the small claims court. The Housing Authority filed a motion in opposition to this request. On November 27, 2012, the trial court

5

held a hearing on Morales's motion to transfer the case to the plenary docket. On December 11, 2012, the court denied the motion to transfer.

Morales moved the trial court to certify for interlocutory appeal the order denying her motion for immediate transfer of the case to the plenary docket. The trial court denied this motion on January 17, 2013.

On February 13, 2013, trial commenced and evidence was heard. The trial was continued to April 25, 2013, and further evidence was presented on that date. At the conclusion of the trial, the court reserved judgment pending additional briefing from the parties.

On May 3, 2013, Morales filed a motion to dismiss the case, claiming that the trial court lacked subject matter jurisdiction over the case. Morales's motion claimed that Indiana Code section 33-33-71-69, which sets forth the process by which magistrates may be appointed to office, violated Article 4, sections 22 and 23 of the Indiana Constitution, concerning the enactment of special laws. The Indiana Attorney General, representing the State of Indiana, responded to Morales's motion on May 31, 2013, argued that Morales lacked standing to advance the argument, and defended the constitutionality of the statute. The dispositive orders in the case were entered by senior judges J. Eric Smithburn and David Ready.

On July 3, 2013, the trial court denied Morales's motion to dismiss.

On July 9, 2013, the trial court entered judgment in favor of the Housing Authority and against Morales, and awarded the Housing Authority immediate possession of the

residence. On August 6, 2013, the trial court entered judgment and awarded the Housing Authority damages totaling $6,000, which included past-due rent, late fees, cleaning fees, court costs, and attorney's fees.

This appeal ensued.

**Discussion and Decision**

Transfer to Plenary Docket

Morales's first contention on appeal is that the trial court erred when it denied her motion for a jury trial or to transfer the case to the plenary docket, because the small claims court lacked jurisdiction over her crossclaims.

The small claims courts dockets of the various Indiana superior courts are governed by Indiana Code section 33-29-2-1, et seq. The statute provides:

Small claims courts have jurisdiction over the following matters:

(1) Civil actions in which the amount sought or value of the property sought to be recovered is not more than six thousand dollars ($6,000). The plaintiff in a statement of claim or the defendant in a counterclaim may waive the excess of any claim that exceeds six thousand dollars ($6,000) in order to bring it within the jurisdiction of the small claims docket.

(2) Possessory actions between landlord and tenant in which the rent due at the time the action is filed does not exceed six thousand dollars ($6,000).

(3) Emergency possessory actions between a landlord and tenant under IC 32-31-6.

I.C. § 33-29-2-4(b).

Ordinarily, filing a claim in the small claims docket waives the plaintiff's right to a jury trial. I.C. § 33-29-2-7(a). However:

7

(b) A defendant may, not later than ten (10) days following service of the complaint in a small claims case, demand a trial by jury by filing an affidavit that:

(1) states that there are questions of fact requiring a trial by jury;

(2) specifies those questions of fact; and

(3) states that the demand is in good faith.

(c) Notice of the defendant's right to a jury trial, and the ten (10) day period in which to file for a jury trial, shall be clearly stated on the notice of claim or on an additional sheet to be served with the notice of claim on the defendant.

(d) Upon the deposit of seventy dollars ($70) in the small claims docket by the defendant, the court shall transfer the claim to the plenary docket. Upon transfer, the claim then loses its status as a small claim.

I.C. § 33-29-2-7.

Under certain circumstances, a party that lacks financial resources may nevertheless pursue a remedy at law. Indiana Code section 34-10-1-1 provides that "an indigent person who does not have sufficient means to prosecute or defend an action may apply to the court in which the action is intended to be brought, for leave to prosecute or defend as an indigent person." Section 33-37-3-2 further provides:

(a) Except as provided in subsection (b), a person entitled to bring a civil action or to petition for the appointment of a guardian under IC 29-3-5 may do so without paying the required fees or other court costs if the person files a statement in court, under oath and in writing:

(1) declaring that the person is unable to make the payments or to give security for the payments because of the person's indigency;

(2) declaring that the person believes that the person is entitled to the redress sought in the action; and

(3) setting forth briefly the nature of the action.

8

(b) If a person brings a civil action or petition for the appointment of a guardian under IC 29-3-5, a clerk shall waive the payment of required fees or other court costs by the person without court approval if:

> (1) the person is represented by an attorney:
>
>> (A) who is employed by Indiana Legal Services or another civil legal aid program; or
>>
>> (B) who:
>>
>>> (i) is serving as a pro bono attorney; and
>>>
>>> (ii) obtained the person as a client through a direct referral from a pro bono district associated with one (1) of the fourteen (14) administrative districts in Indiana established by the Indiana Rules of Court Administrative Rule 3(A); and
>
> (2) the attorney files a statement with the clerk that:
>
>> (A) seeks relief from paying the required fees or other court costs;
>>
>> (B) declares that the person believes that the person is entitled to the redress sought in the action;
>>
>> (C) sets forth briefly the nature of the action;
>>
>> (D) is accompanied by an approved affidavit of indigency; and
>>
>> (E) is signed by the attorney.

(c) This section does not prohibit a court from reviewing and modifying a finding of indigency by the court or a clerk if a person who received relief from the payment of required fees or other court costs ceases to qualify for the relief.

Here, Morales contends that she was entitled to proceed <u>in forma pauperis</u> on her counterclaim against the Housing Authority, although she did not pay a fee or file an

affidavit of indigency in this case. The Small Claims Rules set forth the procedural requirements for pursuing a counterclaim in small claims courts:

> (A) Time and Manner of Filing. If the defendant has any claim against the plaintiff, the defendant may bring or mail a statement of such claim to the small claims court within such time as will allow the court to mail a copy to the plaintiff and be received by the plaintiff at least seven (7) calendar days prior to the trial. If such counterclaim is not received within this time the plaintiff may request a continuance pursuant to S.C. 9. The counterclaim must conform with the requirements of S.C. 2(B)(4).

> (B) Counterclaim in Excess of Jurisdiction. Any defendant pursuing a counterclaim to decision waives the excess of the defendant's claim over the jurisdictional maximum of the small claims docket and may not later bring a separate action for the remainder of such claim.

Ind. Small Claims Rule 5.

This Court interpreted this rule in a case upon which Morales now relies, <u>Buckmaster v. Platter</u>, 426 N.E.2d 148 (Ind. Ct. App. 1981). In <u>Buckmaster</u>, the plaintiffs, the Buckmasters, sued the Platters in small claims court, seeking to evict the Platters from real estate. The Platters counterclaimed for specific performance of an option contract to purchase the real estate. As a threshold question in the Buckmasters' appeal, this Court addressed "whether the small claims division of a superior court has jurisdiction to order specific performance of an option contract." <u>Id.</u> at 150. The Court concluded that because the statute did not expressly provide the small claims court with jurisdiction over equitable matters, the small claims division of the Allen Superior Court in <u>Buckmaster</u> could not properly grant the relief of specific performance sought by the Platters. <u>Id.</u> at 150 (also observing in a footnote that this rationale would extend as well to exclude from the small claims court's jurisdiction prayers for injunctive relief, <u>id.</u> at n. 1).

10

Accordingly, the Buckmaster Court reversed the trial court's order granting the Platters' requested remedy of specific performance. Interpreting Small Claims Rule 5, the Buckmaster Court went on to state:

> The statute gives a litigant various options. He may assert his counterclaim in the small claims division if it is within the jurisdiction of that court. He may also choose to file his counterclaim in the small claims division although the amount claimed is in excess of the jurisdictional amount on the condition that he waives the excess. Finally, the non-mandatory language of S.C.R. 5(A) indicates that a person need not file a counterclaim but may file a separate cause of action either in the small claims division or in the regular civil docket of the superior court.

Id.

This Court later interpreted Small Claims Rule 5 as it pertained to in forma pauperis proceedings in Stout v. Kokomo Manor Apartments, 677 N.E.2d 1060 (Ind. Ct. App. 1997). In that case, Stout, the defendant in a landlord-tenant dispute on the small claims docket of the Howard Superior Court, sought a jury trial and transfer to the plenary docket. Id. at 1065-66. Stout did not pay the $10 fee then required by the statute, and her motion for a jury trial was denied. Id. at 1066-67. Upon appeal, Stout contended that she was entitled to proceed in forma pauperis under then-effective Indiana Code sections 33-19-3-2 and 34-1-1-3.[2] Id. Reviewing the record, we observed that while the trial court was aware that Stout received federal assistance for payment of rent, she did not "[bring] her indigent status to the attention of the trial court before the trial," nor did she apply "for leave to proceed with a jury trial without the payment of the required deposit at any time." Id. at 1067. Rather, Stout moved

---

[2] Section 33-19-3-2 has been superseded by Section 33-37-3-2; Section 34-1-1-3 has been superseded by Section 34-10-1-1.

11

for leave to proceed in forma pauperis only on appeal. Id. Accordingly, we concluded that Stout did not give the trial court an "opportunity to determine whether she had sufficient means to pay the deposit or to decide whether the case could proceed with a jury trial … without the payment of the deposit," and thus found no error in the small claims court's adjudication of the case without a jury or transfer to the plenary docket. Id.

Here, Morales filed counterclaims in response to the Housing Authority's landlord-tenant action. These counterclaims sought, inter alia, (1) damages totaling $20,000, well in excess of the small claims court's jurisdiction; (2) preliminary and permanent injunctions, that is, equitable relief; (3) placement of part or all of the Housing Authority's properties into receivership; and (4) attorney's fees. Morales filed these counterclaims in the small claims division of the St. Joseph Superior Court; she now contends that, as a result of her counterclaims, the small claims court lacked jurisdiction over the entirety of the case and should have transferred the entire matter to the plenary docket.

In response, the Housing Authority contends that the trial court did not err when it denied the motion to transfer the case to the plenary docket because Morales did not properly pursue the transfer. Specifically, the Housing Authority notes that Morales did not pay the $70 fee set forth in Section 33-29-2-7 and did not file her affidavit to proceed in forma pauperis before or contemporaneously with her motion to transfer. Morales argues in response that 1) the small claims court lost subject matter jurisdiction over the case solely by virtue of the allegations in the counterclaim; and 2) she was not required to file an application to proceed in forma pauperis because she had filed a motion to intervene in another case

12

pending on the court's plenary docket and had submitted an affidavit of indigence in that case, and thus the small claims court should have taken notice of this affidavit.

As to the first of these responses, we disagree with Morales. Section 33-29-2-7 does not remove a defendant's counterclaim from the small claims docket until after the $70 fee is paid: "[u]pon the deposit … the court shall transfer the claim to the plenary docket," at which point "the claim <u>then loses its status as a small claim</u>." I.C. § 33-29-2-7(d) (emphasis added). Moreover, our Small Claims Rules make it plain that a counterclaiming party may waive asserted claims beyond the jurisdictional limits: "[a]ny defendant pursuing a counterclaim to decision waives the excess of the defendant's claim over the jurisdictional maximum of the small claims docket and may not later bring a separate action." S.C.R. 5(B). Filing a counterclaim in a small-claims case that falls outside the statutory jurisdictional limits of the small claims docket does not <u>ipso facto</u> deprive the small claims court of subject matter jurisdiction.

Nor do we agree with Morales's second contention. Morales argues that her case can be distinguished from <u>Stout</u> because, she argues, she provided notice of her indigence to the small claims court. Here, Morales's counsel was employed by Indiana Legal Services. <u>See</u> I.C. § 33-37-3-2(b)(1). Morales claims that the small claims court and the Housing Authority were adequately informed of her indigence, and directs us to statements of counsel during a January 17, 2013 hearing and to documents related to a separate case in which Morales had sought to intervene.

13

However, the hearing on Morales's motion to transfer to the plenary docket was conducted on November 27, 2012. Our review of the record in that hearing reveals statements of counsel that Morales was present and available to testify as to her financial condition. Morales did not testify at that hearing, and she had not provided the statement required by Section 33-37-3-2(b)(2) either to the clerk of the court or to the small claims court in the instant case. And while Morales argues that she had submitted such documentation in another case on the plenary docket, the statute requires that the attorney's statement "sets forth briefly <u>the nature of the action</u>," that is, of the action for which leave is sought. I.C. § 33-37-3-2(b)(2)(C). Indeed, we find no submission to the small claims court in this case concerning her financial status until April 12, 2013, after the trial had already commenced and some evidence had been heard.

Under these circumstances, we cannot conclude that Morales timely applied for leave to proceed <u>in forma pauperis</u> on her counterclaims against the Housing Authority. We accordingly conclude that the small claims court did not lack subject matter jurisdiction over Morales's counterclaims, and find no error in the small claims court's denial of her motion to transfer the case to the plenary docket.

Magistrate Appointment

We turn next to Morales's contention that the small claims court's judgment is void because the legislative provisions governing appointment of magistrates to the St. Joseph Superior Court is a special law prohibited under Article 4, Sections 22 and 23 of the Indiana Constitution.

14

The statute Morales challenges is Indiana Code section 33-33-71-69, which provides:

(a) The court may appoint two (2) full-time magistrates under IC 33-23-5 to serve the court using the selection method provided by IC 36-1-8-10(b)(1) or IC 36-1-8-10(b)(2). Not more than one (1) of the magistrates appointed under this section may be a member of the same political party.

(b) A magistrate continues in office until removed by the judges of the court.

Morales contends that this statutory scheme is a special law barred under the Indiana Constitution. The St. Joseph Superior Court employs its magistrates to resolve small claims cases; the purportedly impermissible nature of the statute appointing the magistrates renders judgments of the small claims court void, the argument goes, because the small claims court itself was established contrary to the requirements of the Indiana Constitution.

Where a case challenges the constitutional validity of a statute, we must consider the threshold question of standing before turning to the merits of the challenge itself. Pence v. State, 652 N.E.2d 486, 487 (Ind. 1995). Whether a party has standing is purely a legal question and does not require deference to the trial court's determination of that issue. Wood v. Walden, 899 N.E.2d 728, 731 (Ind. Ct. App. 2009). Except in certain circumstances, it is not enough that a statute is constitutionally infirm; to show standing to challenge the constitutionality of a statute, the challenger "must show adequate injury or the immediate danger of sustaining some injury." Pence, 652 N.E.2d at 488. "An actual dispute involving those harmed is what confers jurisdiction upon the judiciary" to resolve a claim that a statute is constitutionally invalid. Id. This is a restraint upon the power of the courts in this state that emerges from the Indiana Constitution's separation of powers clause, id., and serves as an important check on the exercise of judicial power by Indiana courts. Id. at 487.

Moreover, our courts generally avoid addressing constitutional questions if a case can be resolved on other grounds. Girl Scouts of S. Ill. v. Vincennes Ind. Girls, Inc., 988 N.E.2d 250, 254 (Ind. 2013).

Here, Morales complains that the statutory procedure for appointing magistrates to the St. Joseph Superior Court is an unconstitutional special law. Assuming arguendo that the statute is unconstitutional, our review of the record does not indicate that Morales was injured, because there is no indication in the record that the magistrates of the St. Joseph Superior Court entered any order or judgment on her case. All of the orders provided to this Court were signed by one of three judges: Senior Judges David Ready and J. Eric Smithburn, and Superior Court Chief Judge Michael Scopelitis. Indeed, we note that Morales's challenge to the constitutionality of the statute in the guise of her motion to dismiss arose only after the trial itself was conducted, but before judgment was rendered in the case.

Under the circumstances, Morales faced no injury from the statute's provisions concerning appointment of magistrates to the St. Joseph Superior Court. She accordingly lacks standing to challenge the constitutionality of the statute's provisions.

Judgment and Damages

We turn to the final issue Morales presents for our review, whether the small claims court's entry of judgment and assessment of damages against her was in error.

Small-claims court judgments are "subject to review as prescribed by relevant Indiana rules and statutes." S.C.R. 11(A). Pursuant to Trial Rule 52(A), facts determined in a bench trial are subject to review for clear error. Vance v. Lozano, 981 N.E.2d 554, 557 (Ind. Ct.

App. 2012). We give due regard to the trial court's opportunity to assess witness credibility, which is especially important in the small-claims setting, "where trials are designed to speedily dispense justice by applying substantive law between the parties in an informal setting." Id. That deference does not extend to rulings on matters of substantive law, which we review de novo just as in appeals from courts of general jurisdiction. Id. at 557-58.

Each party bears the same burden of proof in a small-claims action as in a regular civil action. S.C.R. 4(a); Vance, 981 N.E.2d at 558. A party seeking relief must bear the burden of proof to demonstrate that it is entitled to the recovery it seeks. Vance, 981 N.E.2d at 558. Upon appellate review, we consider the evidence in a light most favorable to the judgment, together with the reasonable inferences that may be drawn therefrom. Id. We reverse only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. Id.

Morales raises several points in her challenge to the small claims court's entry of judgment against her. Several of these address information that Morales contends the Housing Authority possessed. Morales claims that the Housing Authority disregarded this information, and that the trial court should have admitted it into evidence and taken it into account in its decision, specifically with regard to proper calculation of her rent. She also contends that the trial court erred in accepting the Housing Authority's calculation of damages, that the late-charge schedule in the lease is a penalty clause that invalidates the lease, and that the Housing Authority failed to mitigate its damages. We address each contention in turn.

*Evidence*

Morales, as part of her argument on this issue, contends that the small claims court erroneously excluded from evidence e-mails sent between her counsel and counsel for the Housing Association. Those e-mails, Morales argues, provided the Housing Authority with notice of Morales's financial situation. Yet Morales has not provided us with copies of the materials she argues the court erroneously excluded. Absent copies of the e-mails, we are unable to review the trial court's evidentiary rulings. Having failed to provide such materials, Morales has waived any related claim of error. See Ind. Appellate Rule 46(A)(8)(a) (requiring that "[e]ach contention must be supported by citations to … the Appendix or parts of the Record on Appeal relied upon"); Vandenburgh v. Vandenburgh, 916 N.E.2d 723, 730 (Ind. Ct. App. 2009) (noting that while "failure to comply with the appellate rules does not necessarily result in waiver of an issue, it is appropriate where noncompliance impedes our review").

Morales also claims that the Indiana Rules of Professional Conduct, which bind attorneys admitted to the practice of law in Indiana, precluded her from personally contacting the Housing Authority to provide income verification that would allow her to obtain an adjustment of her rent. This assertion is flatly incorrect.

The Rules provide:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law or a court order.

18

Ind. Professional Conduct Rule 4.2 (emphasis added.) The language of the rule governs the conduct of lawyers toward the clients of other attorneys; the rule does not bind the parties themselves from direct communication with one another. The comments to the rule state as much: "parties to a matter may communicate directly with each other, and a lawyer is not prohibited from advising a client concerning a communication that the client is legally entitled to make." Prof. Cond. R. 4.2 comment 4. Morales was not precluded from communicating directly with the Housing Authority concerning her financial situation for purposes of adjusting her rent.

*Calculation of Damages*

Morales next argues that the Housing Authority's calculation of damages was incorrect, and accordingly the small claims court erred when it granted the Housing Authority damages equivalent to the jurisdictional limit of $6,000. Morales rests this claim on various grounds. We have already found no error associated with two of these grounds—the small claims court's purported error in excluding e-mail messages sent between the parties' counsel and the claimed inability of Morales to communicate personally with the Housing Association.

At bottom, Morales rests the claim of improper calculation of rent on the claim that the Housing Authority did not properly evaluate her income for purposes of adjusting her rent during either the annual rent assessment process or during the course of the lease on the residence. She argues that the Housing Authority had notice of her limited income as a result of its receipt of her affidavit of indigence and motion to proceed in forma pauperis in a prior

19

case, and that the Housing Authority improperly disregarded that and other evidence of her financial situation in setting her rent.

The lease provides:

> A. Redetermination of Rent.  On an annual basis, HASB [the Housing Authority] shall determine whether the Resident is eligible for HASB housing, whether the rental amount paid by the Resident under this Lease should be increased, decreased, or remain the same, and whether the size of the Dwelling Unit occupied by the Resident is appropriate to the Resident's needs….  The initial amount and subsequent rental amount determinations shall remain in effect for the period between annual re-determination of rent unless during such period:
>
> \*\*\*
>
> (ii)    The Resident requests a redetermination of rent due to a decrease in family income or a change in other circumstances and HASB grants such a request.

(Appellant's App'x at 31.)

Further, the lease provides for a grievance procedure:

> All disputes concerning the obligations of the Resident or HASB under this Lease other than those involving violent or drug-related criminal activity or the health, safety, or right to peaceful enjoyment of the premises by other Residents or HASB employees shall be resolved in accordance with the HASB Grievance Procedure which is in effect at the time such grievance or appeal arises, and a copy of which is posted in the HASB central management office and is incorporated in this Lease by reference.

(Appellant's App'x at 43.)

Morales notes that the Brooke Amendment to the United States Housing Act, 42 U.S.C. § 1437 et seq., limits the portion of an individual's income that may be assessed for rent by a public housing authority.  Morales further observes that pursuant to Wright v. City of Roanoke Redevelop. & Housing Auth., 479 U.S. 418 (1987), residents in rental properties

20

managed by the Housing Authority may pursue a claim against the housing authority under 42 U.S.C. § 1983 where the residents claim the housing authority acts contrary to the requirements of the Brook Amendment with respect to the determination of rent. Id. at 429-432.

Morales pursued such a claim here in her counterclaims, but the trial court ruled against her. We conclude there was sufficient evidence to support the trial court's decision. Morales and Joann Watford ("Watford"), the Housing Authority's property manager for Morales's residence, each testified that Morales met with the Housing Authority on July 31, 2012, and submitted materials for purposes of the annual rent redetermination process provided for in the lease. Watford testified that, based upon the documents she received from Morales, the monthly lease payment for Morales's residence was $216 and would increase to $274 in October 2012. Morales signed forms acknowledging the accuracy of the income statements and the revised rental payments. And while Morales testified that she was not employed consistently and had stopped receiving child support payments, Watford testified that Morales did not dispute these amounts, that Morales had successfully requested rent adjustments on three prior occasions, and that Morales did not submit any request for reassessment of her lease payments after the July 31, 2012 redetermination.

To the extent Morales points to evidence that favors her position, including referring to her petition to proceed in forma pauperis in another case, we decline her invitation to reweigh evidence.

*Liquidated Damages*

We now turn to Morale's next argument, that the late-payment fees specified by the lease are excessive liquidated damages and therefore invalid.

"A liquidated damages clause provides for the forfeiture of a stated sum of money upon a breach of contract without proof of damages." Dean V. Kruse Found., Inc. v. Gates, 973 N.E.2d 583, 591 (Ind. Ct. App. 2012), trans. denied. Such provisions are generally enforceable when the damages arising from a breach of contract "would be uncertain and difficult to ascertain." Coffman v. Olson & Co., P.C., 906 N.E.2d 201, 208 (Ind. Ct. App. 2009), trans. denied.

However, Indiana courts will not enforce liquidated damages provisions that operate as penalties. Corvee, Inc. v. French, 943 N.E.2d 844, 847 (Ind. Ct. App. 2011). Whether a liquidated damages provision is valid is a question of law. Id. Even though damages may be uncertain, to be enforceable "'the stipulated sum must fairly be allowed as compensation for the breach.'" Id. (quoting Olcott Int'l & Co., Inc. v. Micro Data Base Sys., Inc., 793 N.E.2d 1063, 1077 (Ind. Ct. App. 2003), trans. denied). "A party seeking to enforce a liquidated damages clause need not prove actual damages, but may be required to show a correlation between the liquidated damages and actual damages in order to assure that a sum charged may be fairly attributed to the breach." Id.

Here, Morales contends that the late fee scale set forth in the lease is an impermissible liquidated damages provision. However, Morales's brief develops no argument in this regard, instead citing a few cases and making a bald claim of error. Failure to use cogent

argumentation as required by our appellate rules results in waiver. App. R. 46(a)(8)(A); Lyles v. State, 834 N.E.2d 1035, 1050 (Ind. Ct. App. 2005), trans. denied. Morales has accordingly waived our review of this issue.

*Mitigation*

Finally, Morales contends that the Housing Authority did not properly mitigate damages arising from her breach. The requirement that a party mitigate damages is a common law duty independent of the terms of a contract, and where the non-breaching party fails to mitigate damages, the breaching party is entitled to set off the amount of the damages. Geller v. Kinney, 980 N.E.2d 390, 399 (Ind. Ct. App. 2012).

Here, Morales contends that the Housing Authority failed to reassess her rent in light of her reduced income and petition to proceed in forma pauperis, incurring exorbitant attorney fees when summary judgment was available, and rejecting an offer to pay rent into escrow. As we noted above, Morales did not avail herself of the reassessment procedure as she had in the past, was not barred from doing so, and did not contest the rent amount at the time of her annual recertification in July 2012. As to the Housing Authority's choice of litigation strategy, we note that Morales successfully opposed the Housing Authority's application for immediate possession, asserted counterclaims, and on multiple occasions sought to continue or postpone proceedings in the case. As to escrow payments, we note that Morales proposed to pay an amount less than the face value of the rent already due, and there is no evidence that Morales attempted to pay any rent subsequent to the motion to pay money

23

into escrow. Accordingly, we find no basis upon which to conclude that Morales was entitled to set off of damages assessed in this case.

## Conclusion

We find no error in the small claims court's denial of Morales's motion to transfer the case to the plenary docket. Morales lacked the requisite standing to challenge the constitutionality of the statutory scheme for appointing magistrates to the St. Joseph Superior Court. The small claims court did not err in entering judgment against Morales, or in assessing damages against Morales.

Affirmed.

FRIEDLANDER, J., and KIRSCH, J., concur.