**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**ERIC E. SNOUFFER**
Snouffer & Snouffer
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE:

**THOMAS D. SMITH**
Fort Wayne, Indiana

FILED

Dec 10 2012, 10:42 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DAVID VANCE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1203-SC-142 |
| | ) | |
| FRANCISCO LOZANO, ET AL., | ) | |
| | ) | |
| Appellees-Defendants. | ) | |
| | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
SMALL CLAIMS DIVISION
The Honorable Konrad M.L. Urberg, Judge Pro Tempore
Cause No. 02D01-1109-SC-16924

**December 10, 2012**

**OPINION - FOR PUBLICATION**

**VAIDIK, Judge**

## Case Summary

David Vance hired Rock Solid Concrete Inc. and Francisco Lozano[1] to do some concrete work at his Fort Wayne home. Over a year later, his driveway had some pitting. The parties disagreed over what caused the pitting and brought in a third party, who concluded that the pitting was caused by road salt—not bad concrete. Nevertheless, negotiations continued and Rock Solid agreed to replace the driveway at no cost to Vance. When Rock Solid did not timely follow through with its promise, Vance sued in small-claims court. The small-claims court found that Rock Solid made a good-will gesture that was not an enforceable contract, and Vance now appeals. Concluding that the settlement of a doubtful claim is sufficient consideration for a compromise if the claim is made fairly and in good faith, even if it is possibly meritless, we reverse.

## Facts and Procedural History

In May 2009, Vance and Rock Solid entered into an agreement whereby Rock Solid would remove and replace Vance's driveway, sidewalks, and drive approach at his Fort Wayne home. Rock Solid performed the work in July 2009 and warned Vance about the standard of care for newly poured concrete, including the danger of road salt.

Approximately a year and a half later, in December 2010, Vance reported to Rock Solid that his driveway had some pitting and scaling. Thereafter, Vance and Rock Solid, through Lozano, engaged in discussions about the possible causes of the pitting and scaling. In March 2011, the parties arranged for a third party, Erie Haven, to inspect Vance's driveway, test the concrete, and determine the cause of the pitting and scaling.

---

[1] There is no indication in the record of Lozano's official relationship to Rock Solid.

2

Erie Haven offered its non-binding conclusion on March 21 that the concrete was structurally sound and that the pitting and scaling was due to indirect salt application, that is, "snow melting from cars onto the driveway." Appellant's App. p. 23. Erie Haven recommended power washing Vance's driveway and applying a quality sealer. *Id.*

After reviewing Erie Haven's findings and recommendations, Rock Solid wrote a letter to Vance offering to power wash and re-seal Vance's driveway as a "one time" "Customer Accommodation." *Id.* at 25. Rock Solid "apologize[d] for the difficulties" that Vance had experienced with the pitting and scaling but felt "that this problem [was] related [to] salt damage, not the concrete, nor the workmanship." *Id.*

Vance was unhappy with this proposal, and on June 7, 2011, Rock Solid offered to replace Vance's driveway at no charge to him. Rock Solid said that it would try to replace the driveway by the end of August 2011. Vance sent Rock Solid and Lozano several letters, emails, and text messages requesting tentative dates, but Rock Solid and Lozano never responded. Frustrated by the lack of responses, on September 12, 2011, Vance filed a notice of claim against Rock Solid and Lozano in the small-claims division of Allen Superior Court alleging breach of contract. A trial was held in November 2011. Although not required to make findings, *Bowman v. Kitchel*, 644 N.E.2d 878, 879 (Ind. 1995), the small-claims court made the following findings:

> 4. The evidence indicated that said pitting most likely occurred from the road salt coming into contact with the concrete.
> 5. The evidence also showed that Defendant instructed Plaintiff that care had to be used with newly installed concrete to avoid such from happening and that the same is standard for all new concrete.
> 6. The evidence also showed that from the Defendant and third party witnesses, that the Defendant used the appropriate standard of care, the

3

appropriate concrete mixture, and the appropriate installation methods for said concrete for the Plaintiff.

7. The Plaintiff failed to prove that Defendant breached its' [sic] contract or failed to complete the job in a workmanlike manner.

8. The Defendant later agreed voluntarily as a goodwill gesture to replace a portion of the concrete at his own expense.

9. The evidence indicated that Defendant would attempt to replace the concrete by the end of August 2011.

10. That shortly after the time initially indicated as a potential time for replacement of the concrete by the Defendant, the same had not been completed and Plaintiff filed his lawsuit in this matter.

11. The Court finds that Plaintiff did not carry his burden of proof that the Defendants' work was defective in any way, and therefore the Court finds the Defendants are not liable to the Plaintiff for breach of the contract of the parties.

12. The Court also finds that the Defendant did state he would repair the concrete. The Court also finds that while the Defendant may and should carry out his goodwill gesture of replacing the concrete, the Defendant did not breach any contractual agreement with the Plaintiff to do the same as there was no defect in the work of Defendants, and that there was no contract requiring Defendants to do the same.

13. Finally the court finds there are no monetary damages owing from Defendants to Plaintiff.

Appellant's App. p. 6-7.

Vance now appeals.

**Discussion and Decision**

Vance contends that the small-claims court erred in entering judgment in favor of Rock Solid and Lozano on his breach-of-contract claim. Our standard of review in small-claims cases is well settled. Small-claims court judgments are "subject to review as prescribed by relevant Indiana rules and statutes." Ind. Small Claims Rule 11(A). Under Indiana Trial Rule 52(A), the clearly erroneous standard applies to appellate review of facts determined in a bench trial with due regard given to the opportunity of the trial court to assess witness credibility. This deferential standard of review is particularly important

4

in small-claims actions, where trials are designed to speedily dispense justice by applying substantive law between the parties in an informal setting. *Berryhill v. Parkview Hosp.*, 962 N.E.2d 685, 689 (Ind. Ct. App. 2012). But this deferential standard does not apply to the substantive rules of law, which are reviewed de novo just as they are in appeals from a court of general jurisdiction. *Id.*

The parties in small-claims court bear the same burdens of proof as they would in a regular civil action on the same issues. Ind. Small Claims Rule 4(A). It is incumbent upon the party who bears the burden of proof to demonstrate that it is entitled to the recovery sought. *Berryhill*, 962 N.E.2d at 689. We consider evidence in the light most favorable to the judgment, together with all reasonable inferences to be drawn therefrom. *Id.* We will reverse a judgment only if the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *Id.*

Vance argues that the trial court erred as a matter of law in concluding that Rock Solid's agreement to replace the driveway "was simply a goodwill gesture and not an enforceable agreement." Appellant's Br. p. 7. We agree with Vance that the parties entered into an enforceable settlement agreement.

Indiana strongly favors settlement agreements. *Georgos v. Jackson*, 790 N.E.2d 448, 453 (Ind. 2003). Settlement agreements are governed by the same general principles of contract law as any other agreement. *Id.* A "compromise" or "settlement" is a contract between two or more people to amicably settle or adjust their differences on such terms as they can agree. 15B Am. Jur. 2d *Compromise & Settlement* § 1 (2011). More specifically, a "compromise" has been defined as an agreement whereby the parties,

5

through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship. *Id.* A "settlement agreement" constitutes a "compromise"; the underlying purpose is to end a claim or dispute and avoid, forestall, or terminate litigation. *Id.*

A compromise, like any other contractual agreement, must be supported by consideration on both sides. *Id.* at § 19. Notably, a claim need not be valid or well-founded to support a compromise; rather, the settlement of a doubtful claim is sufficient consideration for a compromise if the claim is made fairly and in good faith, even if it is possibly meritless. *Id.* at § 21. "No investigation into the character of the relative values of the different claims involved will be entered into, it being enough if the parties to the agreement thought that there was an actual controversy between them, without regard to what may afterwards turn out to have been an inequality of consideration." *Id.*

Here, the evidence shows that Vance complained to Rock Solid about pitting and scaling of his driveway. In March 2011, after three months of discussions, third-party Erie Haven inspected Vance's driveway and offered its non-binding conclusion that the pitting and scaling was due to road salt and recommended that Vance's driveway be power washed and re-sealed. In April 2011, Rock Solid offered to power wash and re-seal Vance's driveway as a one-time customer courtesy. Vance was unhappy with this solution, and on June 7, 2011, Rock Solid offered to replace Vance's driveway at no charge to him around the end of August 2011. When Vance sent Rock Solid and Lozano several letters, emails, and text messages requesting tentative dates, Rock Solid and

6

Lozano never responded. Discouraged by the lack of communication, in September 2011, Vance filed a notice of claim in small-claims court alleging breach of contract.

We find there to be an enforceable settlement agreement between the parties that settled their dispute as to the cause of the pitting and scaling of Vance's driveway and that its purpose was to avoid litigation on the subject. Even though Rock Solid and Lozano argue that no good-faith dispute existed because Erie Haven concluded in March 2011—which, notably, was three months before Rock Solid made its offer to replace Vance's driveway at no cost to him—that the pitting and scaling was from road salt, the settlement of a doubtful claim is sufficient consideration for a compromise if the claim is made fairly and in good faith, even if it is possibly meritless. There is no evidence in the record that Vance has not acted fairly or in good faith. Accordingly, we reverse the trial court's judgment in favor of Rock Solid and Lozano.

Reversed.

BAILEY, J., and BROWN, J., concur.